AUGUST TERM, 1838.

Crow & Tevis
v.
Ruby.

One of two payees to a note, may assign all his interest in such note to the other payee, who may sue as the legal owner of the note.

---

### CROW & TEVIS v. RUBY.

1. A deed of assignment by a debtor to a trustee for the benefit of certain creditors, on certain terms specified in the deed, does not *prima facie* vest the legal title to the property assigned in such trustee, for the purposes mentioned in such deed. Though good between the parties, when assented to, before it can operate to defeat an execution or attachment, it must be established in proof that the persons named in the deed are creditors to the amounts assumed.
2. A deed conveying "one bundle of orders, one bundle of fee bills, two bundles of notes, two bundles of accounts, and one of receipts," is void for uncertainty.

ERROR to the circuit court of Montgomery county.

S. *Kirtley*, counsel for plaintiff:

*Wells*, counsel for defendant:

TOMPKINS, Judge, delivered the opinion of the court.

Crow & Tevis commenced their action in the circuit court against Ruby, and had judgment by default. A writ of attachment which was issued with the summons, was served on M. Miller Maughas, and two interrogatories, filed by the plaintiff, were answered on oath by Maughas, the garnishee; and the issues made on them were found for the said Maughas, on which the court gave judgment for Maughas, the garnishee aforesaid. To reverse that judgment, Crow & Tevis prosecute their writ of error. On the trial of the cause, Maughas, the garnishee, admitted that he had under his control, charge and custody, of the goods and effects transferred to him by the said Samuel C. Ruby, at the commencement of this suit, and at the time he was summoned as garnishee aforesaid, in trust for the creditors of the said Ruby, certain goods and chattels, evidences of debt and effects of said Ruby, to a large amount. Maughas, the garnishee, offered in evidence a deed made by Ruby to him for the purpose of conveying the above mentioned property, to which the plaintiff objected. The court overruled the objection, and the deed was read in evidence. It was also in evidence that, on the day before the execution of this deed by Ruby to Maughas, he made another deed to Charles Drury, for certain property, worth perhaps five or six hundred dollars. There was no evidence of any money paid by Drury. The consideration expressed in the deed was one hundred and forty-five dollars; and it was also in evidence that Ruby owed Drury that sum of money. Some few weeks after the execution of this deed to Drury, Ruby removed the property sold, as aforesaid, to Drury, with the assent, as is supposed, of Drury. On this evidence, the plaintiff prayed the court to instruct the jury:

1. If they believed the deed of assignment to Maughas was made for the purpose of defrauding and hindering the creditors of the said Ruby in the collection of their just debts, they must find for the plaintiffs.

2. If they believed from the evidence that, upon the eve of making said assignment, the said Ruby fraudulently sold or transferred other property for the purpose of taking it back to his own use, and of keeping it from his creditors, and at the same time intended to make the said assignment, that is evidence from which they may infer the intention of the said Ruby in making said assignment.

AUGUST TERM,
1838.

Crow & Tevis
v.
Ruby.

3. If the jury believed that Ruby, in making this assignment, professed in said assignment to have assigned all his property for the benefit of his creditors, and did not, but reserved some for his own use, more than the law exempts from execution, that it is a fraud upon his creditors, and renders null and void his assignment.

4. That the jury are the judges whether there is fraud or not in Ruby's assignment, and whether he intended practising a fraud upon his creditors in making said assignment.

5. That if the jury believe there is fraud in Ruby's assignment, they must find for the plaintiffs against the garnishee.

The circuit court gave the first and fourth instructions and refused to give the others. The defendant then moved the court to instruct the jury: 1. That the deed of assignment offered in evidence, is *prima facie* sufficient to vest the legal title of the property in the defendant for the purpose therein mentioned. Six other instructions were asked by the defendant, which amount to nothing more than the first, that is, the same matter expressed in other phrases.

A deed of assignment by a debtor to a trustee for the benefit of certain creditors, on certain terms specified in the deed, does not *prima facie* vest the legal title to the property assigned in such trustee, for the purposes mentioned in such deed. Though good between the parties, when assented to, before it can operate to defeat an execution or attachment, it must be established in proof that the persons named in the deed are creditors to the amounts assumed.

The only point arising on these instructions is, what ought to be the effect of the deed of assignment to Maughas? The circuit court instructed the jury, on motion of the plaintiffs, that if they believed the deed to Maughas was made for the purpose of fraudulently hindering the creditors of Ruby from collecting their just debts, that they must find for the plaintiffs. That court also, on the motion of the plaintiffs, instructed the jury that they were the judges whether or not there was fraud in the transaction. It is rather to be regretted that any occasion should arise to make it necessary for the plaintiffs to ask this last instruction, a mere waste of time; the counsel for the defendant could not have thought otherwise. The first instruction was very correctly given; and the plaintiffs' counsel cannot be censured for asking the second and third instructions after the circuit court had permitted the deed of assignment to be given in evidence to the jury, without any proof of the justice of the demand set up by Ruby against himself in that deed. The second and third instructions amount to little more than this: that if the jury believe that Ruby, about the time he made this deed to Maughas, was acting dishonestly by conveying to Drury more property than was necessary to satisfy Drury's demand against him, in order that he might get it back after

paying Drury's demand; that this is evidence from which they might infer that the deed to Maughas was also fraudulent, and consequently void. It is very true that a jury will more readily find a verdict against a man whom they believe to be dishonest, than against one of whom they entertain a better opinion; and the circumstance that so large an amount of property was apparently sold to Drury for so small a sum of money, was well calculated to create in the mind of an inquisitive man a suspicion that the deed to Maughas was founded in fraud. But had Maughas proved to the jury that these preferred creditors, for whom he was made trustee, were in good faith creditors to the several amounts stated, then there is no reason why any impropriety in the transaction with Drury should affect the deed made by Ruby to him. The fifth instruction was well enough refused; for, as it seems to me, it had been much better expressed in the first; and counsel ought not to harrass courts with a repetition of the same thing. The time of the courts belongs to the public, and the parties who needlessly occupy that time, injure thereby other suitors. In giving the defendant's first instruction, the circuit court, it seems to me, committed manifest error. A deed always imports evidence of a consideration between the parties thereto, as between Ruby the maker, and Maughas the grantee; there is no doubt that it imports a consideration. But Crow & Tevis are no parties to this deed; they are creditors of Ruby, and the very fact that Ruby attempts to convey away his property to a trustee for the benefit of absent creditors, is calculated to awaken a suspicion that he thereby proposes to himself some undue advantage. It has often been declared by this court, that any debtor has the right to pay what creditor he pleases first, whether it be with money or property. The only restriction imposed on this right of the debtor, is that imposed by the law made for the relief of insolvent debtors. The man who wishes to have the benefit of that act, must comply with its provisions. The mode of proceeding, as well against debtors suspected of fraud, as against creditors subject to such suspicion, is pointed out in that act. There is no question here arising under that act. The defendant in this action, (Ruby,) seeking to withdraw his property from the action of the ordinary process of the law, conveys it to Maughas to satisfy demands which, for anything known to Crow & Tevis, may be fictitious. Had Ruby, before this attachment was issued, sold and delivered to each

creditor a reasonable amount of his property to satisfy his demand, there might have been some reason in requiring Crow & Tevis to prove fraud against such creditor. The love of property will induce the honest owner to hold it in his own right as long as he can. But here is no delivery to the creditor, and no pretence of sale; but property transferred to an agent not of the creditor, for *none are proved* to exist, but of Ruby himself. If it were established by proof that those persons named in the deed were creditors to the amount assumed, their assent to the act of Ruby might be perhaps implied, and Crow & Tevis be driven into a court of equity to compell Maughas to proceed to execute his duty in a reasonable time, in spite of any restrictions imposed by Ruby in his deed. But to give to Ruby the power to name creditors and debts in any place, and to any amount he pleases, and then to require the creditors to prove the falsehood of his statements in his deed, in order to enable the plaintiffs, Crow & Tevis, to reach the property in the hands of Maughas, would be to allow him virtually to withdraw his property from the action of the writ of execution, and of legal process in general. The ingenuity of debtors would soon find creditors for themselves in all quarters of the world, and those of their neighborhood would do well, in most cases, to abandon their claims rather than to encounter the expense of disproving the demands of the alleged creditors.

At the June term of this court, held at St. Louis this year, for the third judicial district, a case of attachment was before the court. The names of the parties are not recollected; but Mr. Darby, as garnishee, answering interrogatories, stated that he believed the debts, to be secured by the deed of assignment, were in good faith due, and the parties took issue on the law arising on the facts admitted to be true on each side. It was not in that case contended that the deed of assignment imported any evidence that the debts, by it secured to be paid, were real subsisting debts. By that deed, Ruby conveys to Maughas "one bundle of orders, one bundle of fee bills, two bundles of notes, two bundles of accounts, one of receipts." So far as it regards these articles, the deed is, in my opinion, void for want of certainty in the description of the articles purported to be conveyed.

The circuit court then, in my opinion, committed error in instructing the jury, on motion of the defendant or garnishee in this case, that the deed of assignment offered in evidence, is *prima facie* sufficient to vest the

*A deed conveying "one bundle of orders, one bundle of fee bills, two bundles of notes, two bundles of accounts, and one of receipts," is void for uncertainty.*

legal title of the property in the defendant (garnishee) for the purposes therein mentioned; and its judgment ought, in my opinion, to be be reversed for that reason, and the other members of this court concurring, it is reversed.